**ORIGINAL**

1 | KRISTINA S. HOLMAN
Nevada State Bar No. 3742
2 | 4475 South Pecos Road
Las Vegas, Nevada 89121
3 | Tel: (702) 454-2111
Fax: (702) 454-3333
4
Attorney for Plaintiffs,
5 | BEATRICE MARIE SALVATI AS
EXECUTRIX OF THE ESTATE OF
6 | ERNEST SALVATI, JR., DECEASED,
AND IN HER OWN RIGHT, GREGORY
7 | SALVATI, and LISA MARIE MANNION

**UNITED STATES DISTRICT COURT**

**DISTRICT**

CV-S-05-0811-RCJ-LRL

| | |
|---|---|
| BEATRICE MARIE SALVATI AS EXECUTRIX OF THE ESTATE OF ERNEST SALVATI, JR., DECEASED, AND IN HER OWN RIGHT, GREGORY SALVATI, and LISA MARIE MANNION, | **PLAINTIFFS' COMPLAINT** (Jury Demanded) |
| Plaintiffs, | |
| vs. | |
| CAL J. POTTER, III; and, CAL J. POTTER, III, ESQ., CHTD. d/b/a POTTER LAW OFFICES, a Nevada Corporation; DOES I through X, Inclusive; and ROE CORPORATIONS, I through X, Inclusive, | |
| Defendants. | |

**CIVIL COMPLAINT**

COMES NOW the Plaintiffs, BEATRICE MARIE SALVATI, as Executrix of the Estate of Ernest Salvati, Jr., Deceased, and in her own right, GREGORY SALVATI, and LISA MARIE MANNION, and by their attorney, KRISTINA S. HOLMAN, bring this Civil Complaint against the Defendants, CAL J. POTTER, III and CAL J. POTTER, III, ESQ., CHTD. d/b/a POTTER LAW OFFICES, a Nevada Corporation.

1

## The Parties

1.  Beatrice Marie Salvati, hereinafter "Plaintiff Executrix" or "Plaintiff" concerning estate claims and "Wife Plaintiff" or "Plaintiff" in her own right is an individual who resides at 13 L Street, Vanport, Beaver County, Pennsylvania 15009, is the Executrix of the Estate of Ernest Salvati, Jr., Deceased, is a citizen of the Commonwealth of Pennsylvania, and was married to and resided with Ernest Salvati, Jr., hereinafter "Plaintiffs' Decedent," for many years until the date of Plaintiffs' Decedent's death.

2.  Gregory Salvati, hereinafter "Son Plaintiff" or "Plaintiff," is an individual who is the son of Plaintiffs' Decedent, and who resides at 144 Creese Street Extension, Aliquippa, Beaver County, Pennsylvania 15001, and is a citizen of the Commonwealth of Pennsylvania.

3.  Lisa Marie Mannion, hereinafter "Daughter Plaintiff" or "Plaintiff," is an individual who is the daughter of Plaintiffs' Decedent, and who resides at 1539 Virginia Avenue, Monaca, Beaver County, Pennsylvania, and is a citizen of the Commonwealth of Pennsylvania.

4.  Cal J. Potter, III, hereinafter "Defendant Potter" or "Defendant," is an individual who is a citizen of the State of Nevada and who is licensed to practice law in the State of Nevada and maintains a place of business from which he practices law at 1125 Shadow Lane, Las Vegas, Clark County, Nevada 89102, and at all times herein Defendant Potter was acting as a lawyer for Plaintiffs as well as the agent of Corporate Defendant.

5.  Cal J. Potter, III, Esq., CHTD. d/b/a Potter Law Offices, a Nevada Corporation, hereinafter "Corporate Defendant" or

"Defendant," is a Nevada professional corporation with a principal place of business located at 1125 Shadow Lane, Las Vegas, Clark County, Nevada 89102.

## Jurisdiction

6. Jurisdiction to have this case heard in United States District Court, District of Nevada comes under 28 U.S.C. §1332, as there is complete diversity of citizenship between the Plaintiffs (all from Pennsylvania) and the Defendants (both from Nevada), and the tortious actions and breach of contract occurred in Las Vegas, Nevada. This action includes claims arising under the laws of the State of Nevada which are joined pursuant to the doctrine of supplemental jurisdiction and 28 U.S.C. § 1367(a).

## Facts

7. On September 15, 1997, Plaintiffs' Decedent died as a victim of homicide in Las Vegas, Clark County, Nevada.

8. The wrongful death of Plaintiffs' Decedent was caused by the negligence of Preferred Equities Corporation, doing business as Ramada Vacation Suites, MEGO Financial Corporation, the parent corporation which wholly owned Preferred Equities Corporation, and Allied Security, a corporation which provided security services at the Ramada Vacation Suites.

9. On June 15, 1998, Wife Plaintiff entered into a written contract, titled "Contingent Fee Agreement," with both Defendants by which Wife Plaintiff contracted for the legal services of Defendants in order to represent the interests of all Plaintiffs herein against any and all potential parties who were responsible in tort for the wrongful death of Plaintiffs' Decedent. See "Exhibit A" attached hereto.

10. On March 22, 1999, Defendant Potter filed a complaint on behalf of all Plaintiffs and against Preferred Equities Corporation, doing business as Ramada Vacation Suites, and MEGO Financial Corporation in the District Court of Clark County, Nevada at Case No. 99-400918-C.

11. Also included in the complaint as defendants were "Does I-X", but Allied Security was never named as a party, and was never served with process despite the fact that, prior to the September 15, 1999 run date of the statute of limitations, Defendant Potter was made aware through his retained expert, Fred Del Marva, that Allied Security was at fault and should have been named as a party defendant.

12. On October 17, 2002, Defendant Potter specifically advised Michael B. Jones, a Pennsylvania attorney acting as an intermediary for Plaintiffs with Defendants, that all potential defendants had properly been named in the complaint.

13. On August 7, 2003, a judgment by default was entered as against Preferred Equities Corporation, doing business as Ramada Vacation Suites, and MEGO Financial Corporation, but prior to that date those parties had filed for bankruptcy protection and their primary insurer, Reliance Insurance Company became insolvent.

14. On November 12, 2003, Wife Plaintiff, Daughter Plaintiff, and Son Plaintiff each and all signed and mailed a letter to Defendant Potter terminating him and Corporate Defendant as legal representatives of all Plaintiffs in respect to the lawsuit then pending.

15. On November 17, 2004, new counsel for Plaintiffs, Albert D. Massi, Esquire, liquidated the default judgment in the approximate principal amount of $2,000,000.00.

16. On March 31, 2005, Wife Plaintiff, Son Plaintiff, and Daughter Plaintiff held a judgment with tallied interest in the approximate amount of $3,000,000.00 against Preferred Equities Corporation, doing business as Ramada Vacation Suites, and MEGO Financial Corporation.

17. On March 31, 2005, Wife Plaintiff, Son Plaintiff, and Daughter Plaintiff entered into a release with Preferred Equities Corporation, doing business as Ramada Vacation Suites, MEGO Financial Corporation, and their excess insurance carrier, Federal Insurance Company, settling all claims and satisfying the judgment for a payment of $1,500,000.00. See "Exhibit B" attached hereto.

18. The amount of $1,500,000.00 was accepted in compromise because it was not at all clear, given the lack of notice to Federal Insurance Company throughout the litigation as well as the insolvency of Reliance Insurance Company and the bankruptcies of Preferred Equities Corporation and MEGO Financial Corporation, that the judgment could be satisfied in any amount should litigation continue.

19. By the failure of Defendant Potter, and acting as agent of Corporate Defendant, to sue Allied Security within the applicable statute of limitations Plaintiffs suffered damages in the approximate amount of $1,500,000.00.

20. The failure of Defendant Potter, and acting as agent of Corporate Defendant, to sue Allied Security constituted a negligent breach of the applicable standard of care owed by Defendants to Plaintiffs and also constituted a breach of the written contract between the parties.

///
///

# FIRST CAUSE OF ACTION
**As to Beatrice Marie Salvati, Executrix
of the Estate of Ernest Salvati, Jr.
Negligence of Cal J. Potter, III**

21. Plaintiff Executrix hereby incorporates paragraphs 1 through 20 above as if the same were more fully set forth herein.

22. Due to the negligence of Defendant Potter in failing to sue Allied Security, the Estate of Ernest Salvati, Junior, Deceased suffered damages as referenced in paragraph 19 above.

WHEREFORE, Plaintiff Executrix claims damages from Defendant Potter for an amount in excess of $75,000.00.

# SECOND CAUSE OF ACTION
**As to Beatrice Marie Salvati, Executrix
of the Estate of Ernest Salvati, Jr.
Breach of Contract of Cal J. Potter, III**

23. Plaintiff Executrix hereby incorporates paragraphs 1 through 22 above as if the same were more fully set forth herein.

24. Due to the breach of contract by Defendant Potter in failing to sue Allied Security, the Estate of Ernest Salvati, Junior, Deceased suffered damages as referenced in paragraph 19 above.

WHEREFORE, Plaintiff Executrix claims damages from Defendant Potter for an amount in excess of $75,000.00.

# THIRD CAUSE OF ACTION
**As to Beatrice Marie Salvati, Executrix
of the Estate of Ernest Salvati, Jr.
Negligence of Potter Law Offices**

25. Plaintiff Executrix hereby incorporates paragraphs 1 through 24 above as if the same were more fully set forth herein.

26. Due to the negligence of Corporate Defendant in failing to sue Allied Security, the Estate of Ernest Salvati, Junior, Deceased suffered damages as referenced in paragraph 19 above.

WHEREFORE, Plaintiff Executrix claims damages from Corporate Defendant for an amount in excess of $75,000.00.

///

### FOURTH CAUSE OF ACTION
### As to Beatrice Marie Salvati, Executrix
### of the Estate of Ernest Salvati, Jr.
### Breach of Contract of Potter Law Offices

27. Plaintiff Executrix hereby incorporates paragraphs 1 through 26 above as if the same were more fully set forth herein.

28. Due to the breach of contract by Corporate Defendant in failing to sue Allied Security, the Estate of Ernest Salvati, Junior, Deceased suffered damages as referenced in paragraph 19 above.

WHEREFORE, Plaintiff Executrix claims damages from Corporate Defendant for an amount in excess of $75,000.00.

### FIFTH CAUSE OF ACTION
### As to Beatrice Marie Salvati
### Negligence of Cal J. Potter, III

29. Wife Plaintiff hereby incorporates paragraphs 1 through 28 above as if the same were more fully set forth herein.

30. Due to the negligence of Defendant Potter in failing to sue Allied Security, Wife Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Wife Plaintiff claims damages from Defendant Potter for an amount in excess of $75,000.00.

### SIXTH CAUSE OF ACTION
### As to Beatrice Marie Salvati
### Breach of Contract of Cal J. Potter, III

31. Wife Plaintiff hereby incorporates paragraphs 1 through 30 above as if the same were more fully set forth herein.

32. Due to the breach of contract by Defendant Potter in failing to sue Allied Security, Wife Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Wife Plaintiff claims damages from Defendant Potter for an amount in excess of $75,000.00.

///
///

## SEVENTH CAUSE OF ACTION
### As to Beatrice Marie Salvati
### Negligence of Potter Law Offices

33. Wife Plaintiff hereby incorporates paragraphs 1 through 32 above as if the same were more fully set forth herein.

34. Due to the negligence of Corporate Defendant in failing to sue Allied Security, Wife Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Wife Plaintiff claims damages from Defendant Potter for an amount in excess of $75,000.00.

## EIGHTH CAUSE OF ACTION
### As to Beatrice Marie Salvati
### Breach of Contract of Potter Law Offices

35. Wife Plaintiff hereby incorporates paragraphs 1 through 34 above as if the same were more fully set forth herein.

36. Due to the breach of contract by Corporate Defendant in failing to sue Allied Security, Wife Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Wife Plaintiff claims damages from Corporate Defendant for an amount in excess of $75,000.00.

## NINTH CAUSE OF ACTION
### As to Gregory Salvati
### Negligence of Cal J. Potter, III

37. Son Plaintiff hereby incorporates paragraphs 1 through 36 above as if the same were more fully set forth herein.

38. Due to the negligence of Defendant Potter in failing to sue Allied Security, Son Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Son Plaintiff claims damages from Defendant Potter for an amount in excess of $75,000.00.

///
///
///

### TENTH CAUSE OF ACTION
### As to Gregory Salvati
### Breach of Contract of Cal J. Potter, III

39. Son Plaintiff hereby incorporates paragraphs 1 through 38 above as if the same were more fully set forth herein.

40. Due to the breach of contract by Defendant Potter in failing to sue Allied Security, Son Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Son Plaintiff claims damages from Defendant Potter for an amount in excess of $75,000.00.

### ELEVENTH CAUSE OF ACTION
### As to Gregory Salvati
### Negligence of Potter Law Offices

41. Son Plaintiff hereby incorporates paragraphs 1 through 40 above as if the same were more fully set forth herein.

42. Due to the negligence of Corporate Defendant in failing to sue Allied Security, Son Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Son Plaintiff claims damages from Corporate Defendant for an amount in excess of $75,000.00.

### TWELFTH CAUSE OF ACTION
### As to Gregory Salvati
### Breach of Contract of Potter Law Offices

43. Son Plaintiff hereby incorporates paragraphs 1 through 42 above as if the same were more fully set forth herein.

44. Due to the breach of contract by Corporate Defendant in failing to sue Allied Security, Son Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Son Plaintiff claims damages from Corporate Defendant for an amount in excess of $75,000.00.

///
///
///

### THIRTEENTH CAUSE OF ACTION
### As to Lisa Marie Mannion
### Negligence of Cal J. Potter, III

45. Daughter Plaintiff hereby incorporates paragraphs 1 through 44 above as if the same were more fully set forth herein.

46. Due to the negligence of Defendant Potter in failing to sue Allied Security, Daughter Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Daughter Plaintiff claims damages from Defendant Potter for an amount in excess of $75,000.00.

### FOURTEENTH CAUSE OF ACTION
### As to Lisa Marie Mannion
### Breach of Contract of Cal J. Potter, III

47. Daughter Plaintiff hereby incorporates paragraphs 1 through 46 above as if the same were more fully set forth herein.

48. Due to the breach of contract by Defendant Potter in failing to sue Allied Security, Daughter Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Daughter Plaintiff claims damages from Defendant Potter for an amount in excess of $75,000.00.

### FIFTEENTH CAUSE OF ACTION
### As to Lisa Marie Mannion
### Negligence of Potter Law Offices

49. Daughter Plaintiff hereby incorporates paragraphs 1 through 48 above as if the same were more fully set forth herein.

50. Due to the negligence of Corporate Defendant in failing to sue Allied Security, Daughter Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Daughter Plaintiff claims damages from Corporate Defendant for an amount in excess of $75,000.00.

///
///
///

## SIXTEENTH CAUSE OF ACTION
### As to Lisa Marie Mannion
### Breach of Contract of Potter Law Offices

51. Daughter Plaintiff hereby incorporates paragraphs 1 through 50 above as if the same were more fully set forth herein.

52. Due to the breach of contract by Corporate Defendant in failing to sue Allied Security, Daughter Plaintiff suffered damages as referenced in paragraph 19 above.

WHEREFORE, Plaintiffs respectfully pray as follows:

1. A trial by jury on all issues;

2. Damages from Defendants for an amount in excess of $75,000.00 per Plaintiff per Cause of Action;

3. All compensatory, special and general damages allowed by law;

4. Attorneys' fees and costs of suit incurred herein;

6. Prejudgment interest; and,

7. For such other and further relief as the Court shall deem just and proper.

Respectfully submitted this ___ day of June, 2005.

By: _____
KRISTINA S. HOLMAN
Nevada State Bar No. 3742
4475 South Pecos Road
Las Vegas, Nevada 89121
Attorney for Plaintiffs,
BEATRICE MARIE SALVATI AS
EXECUTRIX OF THE ESTATE OF
ERNEST SALVATI, JR., DECEASED,
AND IN HER OWN RIGHT, GREGORY
SALVATI, and LISA MARIE
MANNION

C:\Files\DOCS\Salvati.Legal.Mal\Pleadings\complaint.06.29.05.wpd

# EXHIBIT A

## POTTER LAW OFFICES
### A Professional Corporation
*Contingent Fee Agreement*

The Client, __Beatrice M. Salvati__, retains CAL J. POTTER, III, ESQ.,* hereinafter "ATTORNEY", and any attorneys he may associate with him to provide legal services in pursuit of a claim arising from _____

_____. Attorney agrees to provide such services faithfully and with due diligence. Associate counsel may be employed at the discretion and expense of the Attorney.

The minimum fee shall be __forty__ percent ( __40__ %) of the amount of any recovery or settlement. In the event that an appeal or a second trial is necessary, such minimum fee shall be _____ percent ( ____ %) of the amount of any recovery or settlement. The percentage is to apply to the full amount of the recovery or settlement before deducting disbursements. The Client shall in any event be liable to the Attorney for all reasonable expenses and disbursements whatever the outcome.

All necessary costs and expenses incurred in said litigation, including costs of investigation, depositions, and filing fees shall be borne and paid by the Client within ten (10) days following receipt of an itemized statement from attorneys. The balance remaining 30 days following the date of the statement shall be assessed finance charges at the rate of 18% per annum. Costs and expenses are defined as monies paid out by attorneys on behalf of the client during the processing of client's claim. Client may be at risk for the payment of the opponent's costs and attorney's fees if the case is lost. Any costs and expenses that are outstanding at the conclusion of the case will be deducted from the Client's share of the recovery.

All medical expenses and charges of any nature made by doctors in conjunction with the above-mentioned claim are not litigation costs and will be paid by Client. In the event of a recovery, Client agrees that Attorney may pay any of these unpaid bills from Client's share of the recovery. Should Client recover nothing, it is understood that Attorney is not bound to pay any of these medical bills.

This office cannot testify in your case and therefore requires a competent expert who has the necessary expertise. By the Agreement, you are appointing Attorney as your agent to make the expenditures and, at our discretion require you to deposit sufficient sums with this office before the fee is paid or the expert is retained. You may be required to pay any expert directly. Experts who are retained, whether by this office on your behalf or directly by you, frequently bill the office for their services. An attorney may be ethically required to pay experts upon receipt of cash, or other liquid assets as part of settlement or final resolution of your case, unless you direct otherwise in writing. If POTTER LAW OFFICES has cause to pay an expert on your behalf, you will reimburse this firm in total for that payment.

Attorney agrees that if this matter proceeds through trial, and a judgment is obtained in favor of the Client, he will petition the Court for a separate award of attorney's fees, if legally available. In the event the matter is settled by agreement with a Defendant, the Attorney shall endeavor to negotiate separately an amount of attorney's fees, if legally available.

In the event that fees are awarded by the Court, or agreed as part of a settlement, to be paid by any Defendant, all of such fees shall be paid directly to the Attorney and shall belong to him. All sums so received shall be credited against the minimum fee, and the Attorney shall receive from the Client only such additional sums as are necessary to provide a fee equal to the minimum fee. The amount of court-awarded or agreed-upon fees to be paid by the Defendants shall not be included as part of the recovery or settlement for purposes of calculating the contingency fee. In the event the fees paid by the Defendants exceed the minimum fee, the entire amount so awarded shall belong to the Attorney.

If no recovery is obtained, no fee shall be payable to the Attorney. The Client is liable for expenses regardless of outcome.

*and the law firm of McMILLEN, URICK, TOCCI & FOUSE

"Exhibit A"

*Contingent Fee Agreement*
page 2

Client agrees not to compromise the claim without the Attorney's consent, and Attorney is not authorized to do so without Client's. That, in the event of a loss, the Client may be liable for the opposing party's attorney fees and costs.

That a suit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process.

Client agrees to keep the Attorney advised of his or her whereabouts at all times and to cooperate in the preparation and trial of the case, to appear on reasonable notice of depositions and Court appearances, and to comply with all reasonable requests made of him or her in connection with Court appearances, and to comply with all reasonable requests made of him or her in connection with the preparation and presentation of this case.

Client hereby authorizes the Attorney to turn over all information, including doctors' reports, hospital records, income records, et cetera, and any and all pictures to the insurance company or the Defendants.

No representation has been made as to what amounts, if any, Client may be entitled to recover in this case.

The Attorney, at his or her absolute discretion, may withdraw from the case at any time if investigation discloses that no reasonable grounds exist for pursuing said claim, or if investigation discloses no insurance coverage for Defendant's liability. The Attorney may also withdraw for any reason that hinders or prevents an on-going attorney/client relationship, including, but not limited to, the failure of Client to pay costs as previously set forth, the failure of the Client to adhere to the terms of this agreement, or the failure of the Client to follow the legal advice of the Attorney(s). In addition, the Attorney shall be granted a lien upon said file for remaining costs and fees.

Should Client terminate the services of the Attorney prior to resolution of the matter, the Client is responsible to the Attorney for outstanding costs and fees according to the terms set forth in this agreement. Should the Client not pay monies due, Attorney shall be granted a lien upon said file and any subsequent settlement and recovery thereunder in an amount equal to an amount to the reasonable value of Attorney's services and any outstanding costs.

Upon conclusion of this matter, the Attorney shall provide the Client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the Client and the method of its determination.

DATED this 15th day of June, 1998.

*Beatrice M. Salsate*

POTTER LAW OFFICES
A Professional Corporation

BY: _____

NOTE: This is your contract. It protects you and your attorney and will prevent misunderstanding. If you do not understand it or if it does not contain all the agreements you discussed, please call it to our attention.
-This agreement is pursuant to Nevada Supreme Court Rule 155-

2

"Exhibit A"

# EXHIBIT B

# RELEASE OF ALL CLAIMS

I.

## MUTUAL CONSIDERATION

IN CONSIDERATION of payment to **BEATRICE MARIE SALVATI; GREGORY SALVATI; LISA MARIE MANNION;** and **JEWELENE NELSON** as Special Administratrix of the Estate of the decedent, **ERNEST SALVATI, JR** (RELEASORS) of the sum of One Million Five Hundred Thousand dollars ($1,500,000.00), the receipt and sufficiency of which is hereby acknowledged, RELEASORS for themselves and for their heirs, executors, administrators, successors, and assign, release and forever discharge **PREFERRED EQUITIES CORP.**, a Nevada Corporation, d/b/a **RAMADA VACATION SUITES; MEGO FINANCIAL CORP**, its liability insurance carriers including **FEDERAL INSURANCE COMPANY** and each, every and all of their agents, servants, employees, successors, representatives, affiliates, assigns, associates, heirs, executors, administrators, attorneys, officers and directors and all other persons, firms or corporations (RELEASEES) of and from every claim, right, demand or cause of action arising out of or in any way connected with RELEASORs' claims against and all of the damages, losses, injuries and all other harm alleged which has been the subject of RELEASORs' lawsuit against **PREFERRED EQUITIES CORP.**, a Nevada Corporation, d/b/a **RAMADA VACATION SUITES; MEGO FINANCIAL CORP, and FEDERAL INSURANCE COMPANY**, as specifically the subject of and attendant to RELEASORs' action against RELEASEES and described and embodied in the claim of RELEASORS against **PREFERRED EQUITIES CORP.**, a Nevada Corporation, d/b/a **RAMADA VACATION SUITES; MEGO FINANCIAL CORP**, and **FEDERAL INSURANCE COMPANY**, and more specifically known as <u>BEATRICE MARIE SALVATI; GREGORY SALVATI; LISA MARIE MANNION; and JEWELENE NELSON as Special Administratrix of the Estate of the decedent, ERNEST SALVATI, JR. v. PREFERRED EQUITIES CORP. d/b/a RAMADA VACATION SUITES; MEGO FINANCIAL CORP. and DOES I-X, inclusive,</u> filed in the District Court of Clark County, Nevada and bearing case number A400918, including all injuries, losses, property damages, and all other damages, costs, expenses and claims whatsoever which RELEASORS may have sustained or received, or for which they may now be, or hereafter become, obligated, or which may be incurred, and which may now exist or which may develop in the future. RELEASORS further promise to take all steps and sign all documents necessary to effect the dismissal, with prejudice, of the above-referenced lawsuit.

The RELEASORS hereby declare and represent that the losses and damages sustained may be permanent and regressive and that repair of same may be uncertain and indefinite. In making this Release and agreement, it is understood that RELEASORS rely solely on their own judgment, belief and knowledge of the nature, extent and duration of their losses and damages. It is the intent and understanding of RELEASORS that any claim for presently unknown damages and losses is included within the terms and contents of this Release. The RELEASORS further agree that they have not been influenced to any extent whatsoever in making this Release by any representations or statements regarding their losses or damages or likely outcome of their claim and lawsuit or regarding any other matters made by persons, firms or corporations who are hereby released, or by any person or persons representing them or by any entity employed by them.

It is further agreed that the RELEASORS and their attorneys will pay and/or satisfy all liens exerted by any governmental agencies, public entities, or private entities. On behalf of

"Exhibit B"

RELEASORS, it is further agreed that all RELEASEES and their liability insurance carriers shall be held harmless from and indemnified against all losses, damages, costs and expenses, including reasonable attorneys fees and all other sums which said RELEASEES and their insurance carriers may hereafter incur, pay, be required, or become obligated to pay on account of any and every further additional or other demand, claim, lien or suit by or on behalf of the RELEASORS or any other person, firm, corporation, government agency, or private entity for any loss, damages, injuries or death of any person as provided in this Release, or for any contest or attempt to modify, change, reform, break, set aside, nullify, cancel or negate this Release or any part or provision of this Release for any reason whatsoever, or for any claims or liens arising out of the incident for which payment is being made under the terms of this Release.

II.

## INDEMNITY

IT IS FURTHER UNDERSTOOD AND AGREED that the RELEASORS, in exchange for the foregoing consideration One Million Five Hundred Thousand dollars ($1,500,000.00), will indemnify and hold harmless RELEASEES, against any loss or liability from any and all claims, demands or actions that may hereafter be brought against RELEASEES, by the RELEASORS or by anyone also acting on their behalf, for, or on account of, the incident specifically outlined in the complaint, and any amended complaints, on file in Case No. A400918.

III.

## NO ADMISSION OF LIABILITY

This is a disputed claim in that the payment described herein is not to be construed as an admission of liability on the part of the RELEASEES by whom liability is expressly denied. It is further understood and agreed that the consideration paid for this Release shall be used by the RELEASORs as they may elect and without further claim upon said RELEASEES subsequent to the receipt by the RELEASORS of the consideration recited herein.

IV.

## CONFIDENTIALITY AGREEMENT

IT IS FURTHER UNDERSTOOD AND AGREED that this Release is intended to cover all actions, causes of action, claims for damages, including punitive damages, upon, or by reason of any loss which may be traced to the occurrence which is the subject of said lawsuit. The RELEASORS agree from the date of signing, not to disclose the terms, conditions or facts of the RELEASORS' allegations, or the subject of this Release and Confidentiality Agreement, to any person, except in response to a lawful subpoena or other lawful process, or as may be required by this Release and Confidentiality Agreement, or by an independent auditor or arbitrator. Any breach of Paragraph IV by the RELEASORS shall be deemed a material breach of this agreement and release.

\* The consideration for this Confidentiality Provision is One Dollar ($1.00) receipt of which is hereby acknowledged.
   It is agreed that this Release has no applicability to, and would not be construed by any Court as having applicability to, any potential claim and/or cause of action that Releasors may possess against Releasors prior counsel of record, i.e. Cal J. Potter, III, Esquire, t/d/b/a Potter Law Offices.

2

"Exhibit B"

V.

## ACKNOWLEDGMENT

This Release contains the entire agreement between the parties hereto, and no promise, inducement or representation other than that set forth in this Release has been made, offered or agreed upon. The terms of this Release are contractual and they are not mere recitals.

Should any part, provision, term or condition of this Release be deemed unenforceable or void, then the remaining parts, provisions, terms, and conditions shall be enforced and given meaning as though such unenforceable or void part, provision, term or condition did not exist.

That the RELEASORS are now of legal age and capacity and is, therefore, competent to sign and execute this Release and Confidentiality Agreement and accept full responsibility therefor.

This Release shall be governed by the laws of the State of Nevada.

I, BEATRICE MARIE SALVATI, hereby state that I have read the foregoing document in its entirety, that I fully am aware of and understand the terms and consequences of signing this Release, and that I sign this Release of my own free will and after full consultation with my attorney.

WITNESS the hand of RELEASOR this _31st_ day of _March_, 2005.

_Beatrice Marie Salvati_
**BEATRICE MARIE SALVATI**

STATE OF _Pennsylvania_ )
                        ) SS
COUNTY OF _Beaver_      )

On the _31st_ day of _March_, 2005, personally before me a Notary Public appeared BEATRICE MARIE SALVATI, known to me to be the person whose signature is subscribed to the within instrument and acknowledged to me that he executed the same.

_Kathy E. Losco_
**NOTARY PUBLIC**
In and for said County and State

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kathy E. Losco, Notary Public
Hopewell Twp., Beaver County
My Commission Expires Sept. 7, 2008
Member, Pennsylvania Association Of Notaries

3

"Exhibit B"

I, GREGORY SALVATI, hereby state that I have read the foregoing document in its entirety, that I fully am aware of and understand the terms and consequences of signing this Release, and that I sign this Release of my own free will and after full consultation with my attorney.

WITNESS the hand of RELEASOR this 31st day of March, 2005.

_Gregory Salvati_
GREGORY SALVATI

STATE OF _Pennsylvania_ )
                        ) SS
COUNTY OF _Beaver_      )

On the 31st day of March, 2005, personally before me a Notary Public appeared GREGORY SALVATI, known to me to be the person whose signature is subscribed to the within instrument and acknowledged to me that he executed the same.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kathy E. Losco, Notary Public
Hopewell Twp., Beaver County
My Commission Expires Sept. 7, 2008
Member, Pennsylvania Association Of Notaries

_Kathy L. Losco_
NOTARY PUBLIC
In and for said County and State

I, LISA MARIE MANNION, hereby state that I have read the foregoing document in its entirety, that I fully am aware of and understand the terms and consequences of signing this Release, and that I sign this Release of my own free will and after full consultation with my attorney.

WITNESS the hand of RELEASOR this 31st day of March, 2005.

_Lisa Marie Mannion_
LISA MARIE MANNION

STATE OF _Pennsylvania_ )
                        ) SS
COUNTY OF _Beaver_      )

On the 31st day of March, 2005, personally before me a Notary Public appeared LISA MARIE MANNION, known to me to be the person whose signature is subscribed to the within instrument and acknowledged to me that he executed the same.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kathy E. Losco, Notary Public
Hopewell Twp., Beaver County
My Commission Expires Sept. 7, 2008
Member, Pennsylvania Association Of Notaries

_Kathy L. Losco_
NOTARY PUBLIC
In and for said County and State

4

"Exhibit B"

I, JEWELENE NELSON as Special Administratrix of the Estate of the decedent, ERNEST SALVATI, JR, hereby state that I have read the foregoing document in its entirety, that I fully am aware of and understand the terms and consequences of signing this Release, and that I sign this Release of my own free will and after full consultation with my attorney.

WITNESS the hand of RELEASOR this _____ day of _____, 2005.

_____
JEWELENE NELSON as Special Administratrix of the Estate of the decedent, ERNEST SALVATI, JR

STATE OF _____ )
                      ) ss
COUNTY OF _____ )

On the _____ day of _____, 2005, personally before me a Notary Public appeared JEWELENE NELSON as Special Administratrix of the Estate of the decedent, ERNEST SALVATI, JR, known to me to be the person whose signature is subscribed to the within instrument and acknowledged to me that he executed the same.

_____
NOTARY PUBLIC
In and for said County and State

Approved as to form and content:

_____
Albert D. Massi, Esq.
Attorney for Plaintiffs

5

"Exhibit B"